NOT DESIGNATED FOR PUBLICATION

No. 123,568

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of

LINDSEY FREEMAN,
*Appellant*,

and

MATTHEW FREEMAN,
*Appellee*.

MEMORANDUM OPINION

Appeal from Johnson District Court; ERICA K. SCHOENIG, judge. Opinion filed April 15, 2022. Affirmed.

*Thomas R. Buchanan* and *William C. Odle*, of McDowell, Rice, Smith & Buchanan, P.C., of Kansas City, Missouri, for appellant.

*Catherine A. Zigtema*, of Zigtema Law Office LC, of Shawnee, for appellee.

Before GREEN, P.J., ATCHESON and HURST, JJ.

GREEN, J.: Lindsey Freeman appeals the trial court's downward modification of her ex-husband Matthew Freeman's monthly maintenance obligation to her from $7,725 to $5,721. She argues that the trial court erred when it partially granted Matthew's maintenance modification motion because Matthew relied solely on evidence of his recently decreased income. According to Lindsey, Kansas caselaw holds that an ex-spouse's decreased income alone cannot constitute a material change in circumstances entitling that ex-spouse to the downward modification of his or her maintenance

1

obligation. She also argues that the trial court erred because it modified Matthew's maintenance obligation based on business losses that they had contemplated while negotiating their separation agreement. She contends that Kansas caselaw holds that a foreseeable event that ex-spouses contemplated while negotiating maintenance under a separation agreement can never constitute a material change in circumstance that later entitles an ex-spouse to the downward modification of his or her maintenance obligation.

Matthew counters Lindsey's arguments in a few ways, including that he was not required to prove a material change in his circumstances to allow the trial court to modify his maintenance obligation. Although he recognizes that Kansas caselaw has held that maintenance controlled by K.S.A. 2020 Supp. 23-2903 hinges on an ex-spouse's showing a material change in circumstances, he contends that in reaching these holdings courts have misinterpreted Kansas' maintenance statutes. So, he asserts that we are not required to consider Lindsey's arguments based on whether he established a material change in circumstances as a matter of law. Thus, he asserts that we should affirm the trial court as right for the wrong reason.

As considered below, we note problems with both Lindsey's and Matthew's arguments. In short, Kansas caselaw does not support Lindsey's arguments. And Matthew's arguments are improper and unpersuasive. We, however, cannot conclude that the trial court abused its discretion in its downward modification of Matthew's monthly maintenance obligation to Lindsey from $7,725 to $5,721. Thus, we affirm.

Yet, in doing so, we also note an error that the trial court made when recalculating Matthew's maintenance obligation: It accidentally used Matthew's 2017 total income in its recalculation when it believed it was using Matthew's 2018 total income. Although Lindsey never points out this error that resulted in her receiving even less monthly maintenance, we direct Lindsey to K.S.A. 2020 Supp. 60-260(a), which allows her to

move for relief from the trial court's inadvertent mistake after we have fully decided her appeal.

FACTS

After 11 years of marriage to Matthew, Lindsey petitioned the trial court for a divorce in September 2017. Nearly a year later, in August 2018, the trial court granted Lindsey's divorce petition in a decree that incorporated Lindsey and Matthew's separation agreement. This separation agreement contained a maintenance provision requiring Matthew to pay Lindsey $7,725 per month for 36 consecutive months. It stated that Lindsey and Matthew "agree[d] and underst[ood] that [Matthew's] maintenance obligation to [Lindsey should] be subject to future modification in accordance with K.S.A. 23-2903." And it stated that the trial court retained jurisdiction to modify Matthew's maintenance obligation to Lindsey to a just and reasonable amount should Matthew ever go bankrupt. Outside of this language, though, the maintenance provision did not address the circumstances in which Matthew could move to modify his maintenance obligation to Lindsey. Nor did it explain why Lindsey and Matthew ultimately agreed that Lindsey was entitled to $7,725 per month in maintenance.

In May 2020, Matthew moved for the downward modification of his monthly maintenance obligation to Lindsey. In his maintenance modification motion, Matthew never explained how much he wanted his monthly maintenance obligation reduced. Instead, he noted that the maintenance provision in his and Lindsey's separation agreement stated that his maintenance obligation to Lindsey was subject to future modification in accordance with K.S.A. 2020 Supp. 23-2903. Then, relying on this language, he asserted that the trial court should grant his maintenance modification motion for the following reason:

"At the time of entering into [the separation agreement], it was well known by both parties and counsel for the parties that [Matthew's] income from his business was very fluid and likely to decrease in the near future due to changes in the industry that were foreseeable as well as the expiration of a business contract [Matthew] had with a client who provided a substantial portion of [Matthew's] income.

"As suspected, [Matthew's] income has substantially decreased since August 2018 due to changes in the industry in which [Matthew] does business and a loss of clients. These changes are beyond the control of [Matthew]. This decrease is unfortunate and certainly not something [Matthew] wanted but it is the reality.

"Additionally, [Lindsey's] income has increased since spousal maintenance was agreed upon and awarded."

In her response to Matthew's motion, Lindsey agreed that when she and Matthew entered into their separation agreement, Matthew had mentioned likely future business losses. She also agreed that since entering into their separation agreement, her income of $35,000 per year had increased "approximately $5,000 per year." So, in her response, Lindsey admitted that her imputed income was currently $40,000 per year. All the same, Lindsey argued that the trial court should deny Matthew's motion because his financial circumstances had not deteriorated to the extent that he could no longer afford to pay her $7,250 per month in maintenance as they had originally agreed in their separation agreement.

Eventually, in September 2020, the trial court held a hearing on Matthew's maintenance modification motion. At the start of this hearing, both Lindsey and Matthew admitted several exhibits as proof of their past and current finances. Significantly, they admitted these financial exhibits by agreement, both telling the trial court that although they believed that each other's financial exhibits contained inaccuracies, they had no objections to the admission of any exhibits.

4

Later in the hearing, Matthew clarified the arguments set forth in his written maintenance modification motion. In addition to accusing Lindsey of hiding money and having unreasonable expenses, he explained that when he and Lindsey entered into their separation agreement, "[t]here was a lengthy discussion . . . and everyone was on notice that . . . he was losing his biggest client as of January 1st, 2019." He suggested that at that time, Lindsey also knew that his business was in decline because his business, which provided telecom services to other businesses, had become technologically obsolete.

Then, Matthew addressed his sources of income. Matthew explained that from his business, he paid himself a salary of $10,000 per month before taxes. And on top of this monthly salary, he would distribute several thousand dollars in his business' dividends to himself each month. Matthew asserted that in 2019, he distributed an average of $14,398.75 in dividends to himself each month. This resulted in Matthew's total income in 2019 being $292,785, which was about $400,000 less than his total income in 2018. Matthew added that although he was unsure exactly how much his 2020 total income would ultimately be, he projected that his 2020 total income would be about $100,000 less than his 2019 total income.

Next, Matthew noted that when they initially entered into their separation agreement, he and Lindsey agreed that she was entitled to maintenance at a rate of 18 percent of the difference between their incomes. Using this rate, Matthew argued that the trial court should reduce his monthly maintenance to $3,791.77 per month. Matthew reached this figure by subtracting Lindsey's $40,000 imputed income from his 2019 income of $292,785 before multiplying this figure by the 18 percent rate and then dividing it by 12 months.

Lindsey countered that Matthew had to prove that his financial circumstances had materially changed to be entitled to the downward modification of his maintenance obligation. She asserted that despite Matthew's arguments about his reduced income,

5

Matthew had not met his burden of showing a material change in his financial circumstances for three reasons.

First, Lindsey argued that Matthew could not seek the downward modification of his monthly maintenance obligation to her based on his recent business losses since they contemplated those business losses when entering into their separation agreement. Citing *In re Marriage of Santee*, No. 117,222, 2018 WL 475477 (Kan. App. 2018) (unpublished opinion), Lindsey alleged that foreseeable events considered when entering into a separation agreement cannot constitute the basis for an ex-spouse's later motion to modify maintenance. Second, Lindsey argued that while Matthew's maintenance modification motion focused on his recently reduced income from his business losses, the trial court needed to consider all of Matthew's income sources when evaluating Matthew's motion. Third, Lindsey argued that the trial court should deny Matthew's motion because he could still afford to pay her $7,725 per month in maintenance from his income sources outside the losses incurred in his business. She alleged that Matthew's assets outside of his business had increased about $1 million since their divorce. And as evidence that Matthew's lifestyle had not materially changed, Lindsey stressed that Matthew continued to spend lavishly. For instance, she noted that Matthew had recently spent $16,000 on a vacation in Branson, Missouri.

Once Lindsey and Matthew made their arguments, the trial court went off the record for 10 minutes to review their exhibits. When the trial court returned to the record, it announced its decision to partly grant Matthew's maintenance modification motion, modifying Matthew's monthly maintenance payments from $7,725 to $5,721 based on a material change in Matthew's circumstances:

> "What's at issue is whether or not the Court should modify maintenance downward based on a material change of circumstances. The Court has reviewed the parties' written agreement at the time of their divorce, the property settlement agreement,

6

and as in any case there's always considerations made by both sides when they enter into these settlement agreements, and this case sounds like it was no different.

"The parties agreed back in 2018 at the time of their divorce, based on the information available to both sides as well as with the assistance of a mediator, they used judge assisted mediation at the time, that husband's income would be put on the child support worksheet and for maintenance purposes at 550,000 for the child support worksheet in 2018. Additionally, the parties agreed that mother's income would be, or wife's income would be, $35,000, and that was an imputed wage at the time. The Court finds today that maintenance should be modified downward, and I've done something maybe a little bit different here balancing the equities on both sides, and considering for both sides not only wife's need for maintenance but husband's ability to pay that. And considering everything Mr. Freeman has had his income go down significantly. That's very clear from the evidence. The Court finds that his 2019 income was $292,785 based on the evidence submitted, and that's the paper documentation, the tax returns, the tax documents, the checking account statements. His income in 2018 was, for the actual end of year, was higher than the parties put on the worksheet, but the Court has considered that at the time of their divorce much of that information would have been know[n] by both sides. They were divorced in August of 2018, so more than half the year was over. But the Court[] has averaged Mr. Freeman's income from 2018 as put on the worksheet, which is 550,000, with his 2019 income of $292,785 in calculating the modified maintenance amount.

"The Court has also imputed an income of $40,000 to wife. The Court does find that even by her own statement and her response her income had increased by at least $5,000, if not more, since the time of the parties' divorce. The parties agreed at the time of the divorce that her income would be imputed at 35,000 and so the Court has only increased it by 5,000, even though there have been two years that have passed since the decree was entered and the parties agreed on the 35,000.

"When I average those two amounts, the 550,000 the parties agreed in 2018 with the 2019 income based on the exhibits, that is $842,785, and I've divided that by two for a two-year average. That results in an income of $421,393 for Mr. Freeman for the modified maintenance amount. I've subtracted from that number wife's imputed income that's been increased by $5,000 based on the evidence and the information submitted and that's a difference of $381,393. The Court has continued to use the 18 percent differential that the parties utilized at the time of the settlement in this case for a . . . yearly

7

maintenance amount of $68,651. Dividing that by 12 the modified maintenance amount is $5,721 a month.

"Both sides here have made different requests and the Court understands that, but I'm balancing the equities. Both of them do live nice lifestyles, for lack of a better description, so I've balanced that as well. And the Court has taken into account that in August of 2020 Mr. Freeman did pay a significant amount on his credit card bill, so his discretionary spending is still at a higher level. I don't think that it's equitable or fair . . . to only use the 2019 income. He is a self-employed person. The parties it sounds like knew and had contemplated the loss of the client at the end of 2018, beginning of 2019. The Court has also—so I don't give as much weight to that because the parties knew about that at the time of their negotiation. It did happen of course, but Mr. Freeman has pointed out today through counsel that he expects to lose another approximately $100,000 in business in 2020 alone based on the changing technology or the advancement of technology and different types of things being utilized by his clients. So I've tried to balance all equities in this case. I do think that Mr. Freeman has shown that there is a basis here for maintenance to be modified. His income has definitely gone down, and more than just what the parties were expecting in 2018 when they negotiated the case. However to just base the modification on the 2019 change in income is not equitable or fair. Again, he still has significant discretionary spending, and so the Court has considered that as well in modifying the maintenance. So effective June 1st of 2020, maintenance will be modified to $5,721 per month."

Lindsey timely appeals the trial court's modification of Matthew's monthly maintenance obligation from $7,725 to $5,721.

## ANALYSIS

*Did the trial court err by modifying Matthew's monthly maintenance obligation to Lindsey?*

On appeal, Lindsey argues that the trial court erred by granting Matthew's maintenance modification motion because Matthew never established a material change in circumstances. As she did before the trial court, Lindsey asserts that generally, an ex-

8

spouse's loss of income alone does not constitute a material change in circumstances. Instead, for the downward modification of maintenance, the ex-spouse must prove that his or her overall finances have changed so much that he or she can no longer afford to pay maintenance as originally agreed. Likewise, Lindsey continues to argue that the trial court erroneously reduced Matthew's monthly maintenance obligation based on his foreseeable business losses. She contends that because she and Matthew contemplated his future business losses when negotiating the maintenance provision in their separation agreement, the trial court could not reduce Matthew's monthly maintenance obligation to her just because he ultimately suffered those foreseeable business losses.

To support her arguments in her brief, Lindsey relies heavily on *In re Marriage of Strieby*, 45 Kan. App. 2d 953, 255 P.3d 34 (2011), and *In re Marriage of Santee*, 2018 WL 475477. She argues that both cases stand for the proposition that "a decrease in income alone cannot justify modification of a maintenance agreement." She further argues that both cases stand for the proposition that "a foreseeable event . . . cannot constitute a material change in [an ex-spouse's] financial circumstances." Pointing to this caselaw, she maintains that her and Matthew's separation agreement did not allow the trial court to modify his maintenance obligation to her based on his foreseeable business losses that caused his recently decreased income. For these same reasons, she concludes that the trial court lacked jurisdiction to modify Matthew's monthly maintenance obligation to her.

Although Matthew recognizes that the trial court modified his monthly maintenance obligation to Lindsey because it determined that there was a material change in his financial circumstances, Matthew does not defend the trial court's ruling on appeal. Rather, Matthew's main argument in his appeal brief is that the trial court could modify his monthly maintenance obligation to Lindsey even if his circumstances had not materially changed. According to Matthew, because his and Lindsey's separation agreement stated that his maintenance obligation would be subject to future modification

9

in accordance with K.S.A. 2020 Supp. 23-2903, he just needed to comply with the plain language of K.S.A. 2020 Supp. 23-2903 to successfully move to modify his maintenance obligation.

To support his argument, Matthew discusses some of Kansas' statutes and caselaw concerning maintenance modification. He contends that this history proves that the term "'[m]aterial [c]hange in [c]ircumstances'" is a "term of art specific to child custody and child support modification[]" issues that has over time "whether by habit or by inadvertence" worked its way into maintenance-related caselaw. He asserts that after this court referenced the term material change in circumstances in *In re Marriage of Hedrick*, 21 Kan. App. 2d 964, 911 P.2d 192 (1996)—a case involving a separation agreement containing the term material change in circumstances—other panels of this court have mistakenly used the term as a test when considering maintenance modification disputes controlled by K.S.A. 2020 Supp. 23-2903. In addition, he asserts that our Legislature's 2011 recodification of Kansas' maintenance statutes without the material change in circumstances language shows that he was never statutorily required to prove a material change in his circumstances.

In further support of this argument, Matthew interprets K.S.A. 2020 Supp. 23-2903's plain language. In doing so, he stresses that K.S.A. 2020 Supp. 23-2903 states that an ex-spouse's maintenance obligation may be modified "at any time." And he also points out that K.S.A. 2020 Supp. 23-2902(a) states that the trial court may order an ex-spouse to pay maintenance under a divorce decree "in an amount the court finds to be fair, just and equitable under all of the circumstances." Reading this language together, he contends that the trial court had jurisdiction to modify his maintenance obligation at any time it determined modification was fair, just, and equitable under all of the circumstances. Relying on this interpretation of K.S.A. 2020 Supp. 23-2903, he contends in his brief that Lindsey's argument about the trial court wrongly reducing his maintenance obligation based solely on his decreased income is irrelevant. Then, he concludes that we should affirm the trial court's decision to partially grant his

maintenance modification motion as right for the wrong reason because the trial court's "use of a 'balance of the equities'" when ruling on his motion "merely applied the 'fair, just, and equitable' statutory standard for maintenance."

Notwithstanding this argument, Matthew contends that Lindsey did not designate a record supporting her claims of error because he objected to the admission of most of her exhibits *and* the trial court "resolved the arguments regarding income" in his favor. It seems that Matthew believes that because those things occurred, the only evidence properly admitted at his motion hearing and in the record on appeal prove his reduced finances. Thus, Matthew contends that we should not consider any of Lindsey's arguments because she has not designated a record of properly admitted exhibits on appeal.

Next, Matthew directly addresses Lindsey's argument about the trial court wrongly modifying his monthly maintenance obligation to her based on his decreased income alone. Matthew argues that Lindsey's reliance on *In re Marriage of Strieby* and *In re Marriage of Santee* is misplaced. He complains that both cases are factually distinguishable and that neither held that a loss of income alone can never justify the downward modification of an ex-spouse's maintenance obligation. He also contends that this court's holdings in *In re Marriage of Ehinger*, 34 Kan. App. 2d 583, 121 P.3d 467 (2005), support that a loss of income alone may support a downward modification of an ex-spouse's maintenance obligation in some circumstances.

Of note, Matthew never directly addresses Lindsey's argument that the trial court erred by partially granting his maintenance modification motion based on his foreseeable business losses that were contemplated when they entered into their separation agreement. Instead, the only other issue Matthew addresses in his brief is how the trial court recalculated his maintenance obligation to Lindsey. He stresses that in her brief, Lindsey never challenges the trial court's math when recalculating his maintenance

11

obligation. Because Lindsey has not challenged the trial court's reduction of his monthly maintenance obligation from $7,725 to exactly $5,721, Matthew argues that Lindsey has abandoned any argument that she may have had regarding "the specific amount of the maintenance award.'"

*Our Standard of Review*

Usually, when reviewing the trial court's decision to modify maintenance, "this court examines the record to determine if there is substantial competent evidence to support the trial court's ruling and whether the trial court abused its discretion." *In re Marriage of Strieby*, 45 Kan. App. 2d at 961. "Substantial competent evidence constitutes such legal and relevant evidence that a reasonable person might accept as sufficient to support the trial court's conclusion." *In re Marriage of Knoll*, 52 Kan. App. 2d 930, 935, 381 P.3d 490 (2016). When engaging in this review, this court must not reweigh the evidence or the trial court's credibility determinations. 52 Kan. App. 2d at 935. A trial court abuses its discretion when its decision is based on an error of law, an error of fact, or some unreasonable basis. *In re Marriage of Traster*, 301 Kan. 88, 109, 339 P.3d 778 (2014).

Because contract principles apply to issues involving separation agreement interpretation, when analyzing a separation agreement, we must seek to "'ascertain and give effect to the mutual intention of the parties at the time the contract was made.'" *In re Marriage of Knoll*, 52 Kan. App. 2d at 940. When the ex-spouses' intent is ascertainable from the plain language of their separation agreement, we must apply the ex-spouses' separation agreement as unambiguously written. 52 Kan. App. 2d at 940. Although the existence of a contract normally constitutes a question of fact, arguments involving separation agreement interpretation constitute questions of law over which this court exercises unlimited review. *U.S.D. No. 446 v. Sandoval*, 295 Kan. 278, 282, 286 P.3d 542 (2012); *In re Marriage of Knoll*, 52 Kan. App. 2d at 939.

When resolving separation agreement disputes, we also exercise unlimited review over statutory interpretation issues. And when resolving statutory interpretation disputes, the plain language of the statute controls our interpretation if its plain language is unambiguous. *In re Marriage of Strieby*, 45 Kan. App. 2d at 976. Yet, when the statute's language is ambiguous, we try to interpret the Legislature's intent by using the cannons of statutory construction and reviewing the statute's legislative history. *Nauheim v. City of Topeka*, 309 Kan. 145, 150, 432 P.3d 647 (2019). Under the canons of statutory construction, we must avoid unreasonable statutory interpretations that would lead to absurd results; we presume that the Legislature never intends to enact meaningless legislation. *In re Marriage of Traster*, 301 Kan. at 98. When the Legislature takes some legislative action, we generally presume that it does so with the full understanding of the statutory subject at issue, including previous versions of a statute and the existing caselaw analyzing that statutory subject. *Ed DeWitte Ins. Agency v. Financial Assocs. Midwest*, 308 Kan. 1065, 1071, 427 P.3d 25 (2018). Ordinarily, a revision to a statute creates the presumption that our Legislature intended to make a substantive change to that revised statute. *Brennan v. Kansas Insurance Guaranty Ass'n*, 293 Kan. 446, 458, 264 P.3d 102 (2011). But "this presumption's strength, weakness, or validity changes according to the circumstances." 293 Kan. at 458. When the Legislature makes no revisions to avoid the standing judicial interpretation of a statute, though, we ordinarily presume that the Legislature agreed with the standing judicial interpretation. *In re Adoption of G.L.V.*, 286 Kan. 1034, 1052, 190 P.3d 245 (2008).

Finally, to the extent Lindsey's appeal concerns preservation issues, preservation issues are questions of law over which we exercise unlimited review. *Johnson v. Board of Directors of Forest Lakes Master Assn*, 61 Kan. App. 2d 386, 393, 503 P.3d 1038 (2021).

*The Relevant Maintenance Law*

Maintenance by divorce decree and maintenance settled by a separation agreement are fundamentally different. Maintenance ordered by a divorce decree must be modified by the trial court in accordance Kansas' maintenance modification statutes. *In re Marriage of Strieby*, 45 Kan. App. 2d at 962. In contrast, when ex-spouses settle maintenance as part of their separation agreement that is incorporated into their divorce decree, the trial court cannot modify an ex-spouse's maintenance obligation "'except as prescribed by the agreement or as subsequently consented to by the parties.'" 45 Kan. App. 2d at 962. The trial court's jurisdiction to modify maintenance is limited by the separation agreement's conditions on maintenance. *In re Marriage of Ehinger*, 34 Kan. App. 2d at 588.

Here, Lindsey and Matthew had a maintenance provision within their separation agreement that the trial court incorporated into their divorce decree. The maintenance provision stated that Lindsey and Matthew agreed and understood that Matthew's maintenance obligation to Lindsey should be subject to future modification in accordance with K.S.A. 2020 Supp. 23-2903. It stated variations of this sentence twice. It also stated that the trial court could modify maintenance to a just and reasonable amount should either Lindsey or Matthew goes bankrupt. But this was the extent of the language within Lindsey and Matthew's separation agreement concerning maintenance modification.

Thus, the plain language of Lindsey and Matthew's maintenance provision within their separation agreement states that absent situations involving bankruptcy, all of Lindsey and Matthew's requests for maintenance modification would be subject to future modification in accordance with K.S.A. 2020 Supp. 23-2903. As a result, the plain language of their separation agreement required the trial court to evaluate Matthew's maintenance modification motion under K.S.A. 2020 Supp. 23-2903.

Next, as just noted, Lindsey and Matthew's divorce decree incorporated their separation agreement. But in doing so, the divorce decree just repeated the language within their separation agreement. In total, it stated:

"[Matthew] shall pay maintenance in the amount of $7,725.00 per month beginning August 1, 2018, and for 36 months thereafter. The parties agree and understand that [Matthew's] maintenance obligation to [Lindsey] shall be subject to future modification in accordance with *K.S.A. 23-2903*."

Thus, their divorce decree, like their separation agreement, clearly required the trial court to evaluate the merits of Matthew's maintenance modification motion in accordance with K.S.A. 2020 Supp. 23-2903.

K.S.A. 2020 Supp. 23-2903 is Kansas' current statute governing maintenance modification. But before 2011, all the rules governing maintenance, including modification, were included under a single subsection of a single statute—K.S.A. 60-1610(b)(2). K.S.A. 60-1610(b)(2), in its entirety, stated:

"*Maintenance. The decree may award to either party an allowance for future support denominated as maintenance, in an amount the court finds to be fair, just and equitable under all of the circumstances. The decree may make the future payments modifiable or terminable under circumstances prescribed in the decree.* The court may make a modification of maintenance retroactive to a date at least one month after the date that the motion to modify was filed with the court. In any event, the court may not award maintenance for a period of time in excess of 121 months. If the original court decree reserves the power of the court to hear subsequent motions for reinstatement of maintenance and such a motion is filed prior to the expiration of the stated period of time for maintenance payments, the court shall have jurisdiction to hear a motion by the recipient of the maintenance to reinstate the maintenance payments. Upon motion and hearing, the court may reinstate the payments in whole or in part for a period of time, conditioned upon any modifying or terminating circumstances prescribed by the court,

15

but the reinstatement shall be limited to a period of time not exceeding 121 months. The recipient may file subsequent motions for reinstatement of maintenance prior to the expiration of subsequent periods of time for maintenance payments to be made, but no single period of reinstatement ordered by the court may exceed 121 months. Maintenance may be in a lump sum, in periodic payments, on a percentage of earnings or on any other basis. *At any time, on a hearing with reasonable notice to the party affected, the court may modify the amounts or other conditions for the payment of any portion of the maintenance originally awarded that has not already become due, but no modification shall be made without the consent of the party liable for the maintenance, if it has the effect of increasing or accelerating the liability for the unpaid maintenance beyond what was prescribed in the original decree*. Except for good cause shown, every order requiring payment of maintenance under this section shall require that the maintenance be paid through the central unit for collection and disbursement of support payments designated pursuant to K.S.A. 23-4,118, and amendments thereto. A written agreement between the parties to make direct maintenance payments to the obligee and not pay through the central unit shall constitute good cause. If child support and maintenance payments are both made to an obligee by the same obligor, and if the court has made a determination concerning the manner of payment of child support, then maintenance payments shall be paid in the same manner." (Emphases added.)

K.S.A. 60-1610 also addressed child support orders within a divorce decree. K.S.A. 60-1610(a) specifically stated that for a child support modification motion made within three years of the initial child support order, the trial court may modify a parent's child support obligation "when a material change in circumstances is shown." The material change in circumstances language, though, does not appear under K.S.A. 60-1610(b)(2).

In 2011, our Legislature recodified many statutes related to domestic relations, including K.S.A. 60-1610's rules on maintenance and child support. See L. 2011, ch. 26, § 15. Then, our Legislature separated the maintenance rules from the child support rules. See K.S.A. 2020 Supp. 23-2901 et seq. (listing rules on establishment and modification of maintenance) and K.S.A. 2020 Supp. 23-3001 et seq. (listing rules on establishment

16

and modification of child support). The language allowing the trial court to modify a parent's child support obligation within three years of the initial child support order upon a showing of a "material change in circumstances" is now under K.S.A. 2020 Supp. 23-3005(a). On the other hand, the only new rule regarding maintenance is K.S.A. 2020 Supp. 23-2901's clarification that when interpreting the maintenance statutes, "the terms 'alimony' and 'maintenance' are synonymous." *The remaining rules regarding maintenance under K.S.A. 60-1610(b)(2) were just split into smaller sections and then reenacted under K.S.A. 2020 Supp. 23-2902 through K.S.A. 2020 Supp. 23-2905.*

Relevant to this appeal, K.S.A. 2020 Supp. 23-2902(a) states that a divorce decree "may award to either party an allowance for future support denominated as maintenance, in an amount the court finds to be fair, just and equitable under all of the circumstances." K.S.A. 2020 Supp. 23-2902(c) states that a divorce decree "may make the future [maintenance] payments modifiable or terminable under the circumstances prescribed in the decree." And K.S.A. 2020 Supp. 23-2903, like the middle portion of K.S.A. 60-1610(b)(2), states:

> "At any time, on a hearing with reasonable notice to the party affected, the court may modify the amounts or other conditions for the payment of any portion of the maintenance originally awarded that has not already become due, but no modification shall be made without the consent of the party liable for the maintenance, if it has the effect of increasing or accelerating the liability for the unpaid maintenance beyond what was prescribed in the original decree." K.S.A. 2020 Supp. 23-2903.

So, in summary, assuming there are no jurisdictional issues, K.S.A. 2020 Supp. 23-2903 provides that a trial court may modify an ex-spouse's future maintenance obligation downward as long as the affected ex-spouse has reasonable notice. The plain language of K.S.A. 2020 Supp. 23-2903 does not list any other conditions precedent for an ex-spouse to successfully move for the downward modification of his or her maintenance obligation. This means that the plain language of Kansas' maintenance

modification statute does not include a fact-based maintenance modification test. Instead, K.S.A. 2020 Supp. 23-2903 includes procedural rules and limitations on when the trial court may grant an ex-spouse's downward maintenance modification motion.

Yet, as explained, both Lindsey and Matthew's separation agreement and divorce decree told the trial court to consider future modification motions in accordance with K.S.A. 2020 Supp. 23-2903. Since the plain language of K.S.A. 2020 Supp. 23-2903 does not contain a fact-based maintenance modification test, though, neither Lindsey and Matthew's separation agreement, nor the trial court's divorce decree, nor the plain language of K.S.A. 2020 Supp. 23-2903 says what Matthew must prove to successfully move for the downward modification of his maintenance obligation to Lindsey. Thus, we must advance our inquiry into K.S.A. 2020 Supp. 23-2903.

When our Legislature recodified the maintenance statutes, it only added a definitional provision explaining that maintenance and alimony meant the same thing. K.S.A. 2020 Supp. 23-2901. The other maintenance rules listed under K.S.A. 60-1610(b)(2) were just split into smaller sections and then reenacted under K.S.A. 2020 Supp. 23-2902 through K.S.A. 2020 Supp. 23-2905. Therefore, although our Legislature recodified Kansas' maintenance statutes in 2011, our Legislature made no substantive changes in doing so. In fact, Kansas' maintenance modification rule has not substantively changed since 1965. This was when our Legislature first included language under K.S.A. 60-1610 allowing an ex-spouse to move for the downward modification of his or her maintenance obligation upon reasonable notice to the maintenance-obligee. See *Herzmark v. Herzmark*, 199 Kan. 48, 51, 427 P.2d 465 (1967) (overruled on other grounds by *In re Marriage of Quint*, 258 Kan. 666, 677, 907 P.2d 818 [1995]) (discussing the 1965 amendments to Kansas' "divorce and alimony" law and analyzing K.S.A. 1965 Supp. 60-1610).

18

Previously, while determining what entitles an ex-spouse to the downward modification of his or her maintenance obligation, Kansas appellate courts have interpreted Kansas' maintenance modification rule. In *In re Marriage of Ehinger*, for instance, this court examined the plain language of K.S.A. 60-1610(b)(2) while considering Sandra's argument that the trial court lacked jurisdiction to modify her ex-husband Timothy's maintenance obligation because their divorce decree did not expressly address his ability to move for the downward modification of his maintenance obligation. 34 Kan. App. 2d 583. She argued that because their divorce decree included several provisions about maintenance but no explicit provision on maintenance modification, the trial court lacked jurisdiction to modify Timothy's maintenance. 34 Kan. App. 2d at 584.

In rejecting Sandra's argument, the *Ehinger* court cited the maintenance modification test as stated in 2 Elrod and Buchele, Kansas Law and Practice: Kansas Family Law §§ 10.81 and 10.82, p. 51 (1999). It explained that handbook stated:

> "'The court may retain the power to modify future maintenance payments which are court ordered. K.S.A. 60-1610(b)(2) . . . Maintenance may be reduced upon a showing of a material change in circumstances unless a court approved separation agreement prohibits modification. *Wright v. Wright*, 209 Kan. 628, 498 P.2d 80 (1972); *Grundy v. Grundy*, 4 Kan. App. 2d 302, 605 P.2d 162 (1980).'" 34 Kan. App. 2d at 587.

Afterward, it held that "[t]he extended period maintenance runs in many cases suggests modification of continued support is an economic issue which is subject to change and should be revisited if the facts show a material change in circumstances." 34 Kan. App. 2d at 590.

At this juncture, it is worth pointing out that the Kansas Family Law handbook passage, cited by the *In re Marriage of Ehinger* court for the proposition that downward maintenance modification under K.S.A. 60-1610(b)(2) may occur upon an ex-spouse's showing of a material change in circumstances, relied on our Supreme Court's *Wright*

19

decision and this court's decision in *Grundy v Grundy*, 4 Kan. App. 2d 302, 605 P.2d 162 (1980). In *Wright*, our Supreme Court held that remarriage creates a presumption of maintenance termination unless the remarried ex-spouse rebuts the presumption by proving that "special circumstances justify[] the continuance of [maintenance]" 209 Kan. at 630. Eventually, our Supreme Court reversed this specific *Wright* holding about remarriage merely creating a presumption of maintenance termination when the judgment so provides. See *Quint*, 258 Kan. 677. Even so, the *Wright* court's analysis indicates that a material change in circumstances—like remarriage—may result in the termination of an ex-spouse's maintenance obligation unless the remarried spouse proves that special circumstances justify continuing maintenance.

As for the *Grundy* decision, there, this court rejected ex-husband Gordon's complaint about having to pay the remaining balance of his maintenance obligation to his ex-wife Marsha. Marsha and Gordon's divorce decree required Gordon to pay Marsha maintenance even if she remarried. It also contained an acceleration clause allowing Marsha to seek immediate payment of Gordon's outstanding maintenance obligation should he ever default. Gordon defaulted on March 1, 1973, and Marsha remarried on March 23, 1973. 4 Kan. App. 2d at 303. When Marsha eventually invoked the acceleration clause, Gordon argued that making him pay his outstanding maintenance obligation was unfair since Marsha had remarried. This court held that it was irrelevant whether Marsha remarried several days after Gordon's default because their divorce decree stated that Gordon's entire maintenance obligation was due immediately upon his default. In reaching this ruling, this court stressed that the trial court had discretion to include the acceleration clause in Marsha and Gordon's divorce decree and that Gordon never appealed their divorce decree. 4 Kan. App. 2d at 305.

Although the *Grundy* decision never expressly held that an ex-spouse moving for maintenance modification under K.S.A. 1979 Supp. 60-1610 must prove a material change in circumstances, *Grundy*'s facts support that a material change in the ex-spouses'

20

circumstances is necessary for the trial court to grant that ex-spouse's downward maintenance modification motion. Gordon's complaints about Marsha remarrying and the effect of his default were addressed in his and Marsha's divorce decree. The divorce decree created conditions barring the trial court from terminating his maintenance obligation if Marsha ever remarried. At the same time, the divorce decree required the trial court to accelerate Gordon's maintenance obligation should Marsha ask it to do so after his default. So, it follows that Marsha's remarriage and Marsha's invocation of the acceleration clause in their divorce decree could not constitute a material change in circumstances entitling Gordon to either the modification or termination of his maintenance obligation.

Returning our focus to the *In re Marriage of Ehinger* decision, we note that it is important for us to consider Sandra's other argument: Timothy's financial circumstances had not changed to an extent meriting the reduction of his maintenance obligation. Although Sandra recognized that Timothy was now unemployed, making about $8,500 less per month than when the trial court entered their divorce, she argued that Timothy was "merely us[ing] his retirement money without making more." 34 Kan. App. 2d at 590. Timothy countered that they both knew that he was going to lose his job when the trial court entered their divorce decree. The *Ehinger* court ultimately rejected Sandra's argument without addressing Timothy's argument. It found that because Sandra's income had increased substantially while Timothy's income had decreased substantially, their financial situations had changed. It concluded that given this material change in circumstances, the trial court's downward modification of Timothy's maintenance obligation was reasonable. 34 Kan. App. 2d at 590.

As a result, the *Ehinger* decision supports that when analyzing a maintenance modification motion under K.S.A. 2020 Supp. 23-2901 et seq., absent language stating otherwise, a trial court should consider whether the ex-spouses' financial situations have changed to an extent that the moving ex-spouse's maintenance modification request is

reasonable. Said another way, the *Ehinger* decision supports the proposition that the trial court should consider whether there has been a material change in circumstances. Indeed, by focusing on whether there was a material change in Sandra's and Timothy's financial situations, the *Ehinger* court suggested that when evaluating a request to modify maintenance controlled by K.S.A. 2020 Supp. 23-2901 et seq., a key question is whether either ex-spouse's financial situation has substantially changed. Additionally, given that the *Ehinger* court's analysis mainly hinged on Timothy's reduced income, the *Ehinger* decision also supports that a substantial decrease or increase in an ex-spouse's income may constitute a material change in circumstances.

Since deciding *Ehinger*, this court has considered two maintenance modification cases where the ex-spouses had separation agreements containing maintenance provisions that are very similar to Lindsey and Matthew's maintenance provision. The first case that this court considered was *In re Marriage of Strieby*. There, the only direct language regarding maintenance modification in Linda and James' separation agreement stated:

> "'The Court shall retain jurisdiction of maintenance pursuant to K.S.A. 60-1610(b)(2) so that at any time, on hearing with reasonable notice to the party affected, the court may modify the amounts or other conditions for the payment of any portion of the maintenance originally awarded that has not already become due, no modification shall be made without the consent of the party liable for the maintenance, if it has the effect of increasing or accelerating the liability for the unpaid maintenance beyond what was prescribed in the original decree." 45 Kan. App. 2d at 956.

Therefore, much like Lindsey and Matthew's maintenance provision, Linda and James' maintenance provision simply quoted the modification language in K.S.A. 60-1610(b)(2), now K.S.A. 2020 Supp. 23-2903.

In the *Strieby* case, James moved for the downward modification of his maintenance obligation to Linda because since their divorce, his financial situation had

deteriorated. As evidence of his worsened financial condition, he alleged that he no longer had severance pay from his former employer, that he had recently made bad business investments, that he had recently moved to a region with a higher cost of living, and that he had two mortgage payments. 45 Kan. App. 2d 956-57. He also argued that the escalator clause in his and Linda's maintenance provision was illegal under K.S.A 60-1610(b)(2) and otherwise unconscionable. 45 Kan. App. 2d 959. Linda responded that the trial court lacked jurisdiction to either terminate or modify James' maintenance obligation because "no change in circumstances had occurred since the divorce which would justify a modification of maintenance." 45 Kan. App. 2d at 957. She asserted that she should not be punished for James' poor financial decisions. 45 Kan. App. 2d at 957. And she argued that it was too late for James to complain about the escalator clause since they had already entered into the separation agreement with the escalator clause. 45 Kan. App. 2d at 959-60.

The trial court agreed with Linda's arguments. It denied James' maintenance modification motion, explaining that James had "failed to prove that circumstances had changed since the divorce because Linda's need for maintenance had not changed and James still had the ability to pay." 45 Kan. App. 2d at 958. It pointed out that granting James' motion would be unfair to Linda based on James' decision to make poor financial choices. 45 Kan. App. 2d at 958. Also, it found that his escalator clause arguments were unreasonable. 45 Kan. App. 2d at 960.

James appealed, but the *In re Marriage of Strieby* court affirmed the trial court. In doing so, it first emphasized:

> "While maintenance by decree may be modified by the court upon a showing of material change in circumstances, '[i]t is clear that maintenance settled by a separation agreement that is incorporated into the divorce decree is not subject to subsequent modification by

23

the court except as prescribed by the agreement or as subsequently consented to by the parties.'" 45 Kan. App. 2d at 962.

Then, it ruled that because Linda and James' separation agreement stated that K.S.A. 60-1610(b)(2) controlled maintenance modification, the trial court's jurisdiction to modify James' maintenance obligation was necessarily controlled by K.S.A. 60-1610(b)(2). 45 Kan. App. 2d at 962-63. Afterward, it rejected James' argument that the escalator clause violated K.S.A. 60-1610(b)(2) because our Supreme Court had already rejected this exact argument in *In re Marriage of Monslow*, 259 Kan. 412, 418, 912 P.2d 735 (1996). 45 Kan. App. 2d at 964. Yet, it stressed that because James agreed to the escalator clause as part of his and Linda's separation agreement, James had also created any error resulting from the inclusion of the escalator clause in his separation agreement's maintenance provision. 45 Kan. App. 2d at 965.

Additionally, the *In re Marriage of Strieby* court rejected James' argument that the escalator clause was unconscionable because the clause's enforcement worsened his finances so much that his circumstances had materially changed. 45 Kan. App. 2d at 966. In reaching this ruling, the *Strieby* court once again emphasized that James willingly entered into the separation agreement with an escalator clause. 45 Kan. App. 2d at 966. Then, it determined that the trial court's denial of James' motion was appropriate since not only did James fail to prove a material change in circumstances, but also the evidence indicated that his financial circumstances had improved while Linda's had worsened since they had entered their separation agreement. It further emphasized that "James' financial losses relating to any investments were his own choice." 45 Kan. App. 2d at 967.

As a result, the *In re Marriage of Strieby* decision's use of the material change in circumstances test supports that when an ex-spouse's ability to modify maintenance is controlled by K.S.A. 2020 Supp. 23-2903, the trial court should consider whether there has been a material change in circumstances. The *Strieby* decision supports that a

24

material change in circumstances is not an event already considered by the separation agreement. It is not a financial condition imposed by the separation agreement. And it is not an intentional but poor financial decision. Instead, a material change in circumstances is something that changes the dynamics between the ex-spouses so that the continuation of maintenance payments is unfair. Thus, in assessing whether the ex-spouses had proven a material change in their circumstances, the *Strieby* court, like the *Ehinger* court, compared the ex-spouses' current financial situations to the ex-spouses' financial situations when they originally entered the separation agreement. *In re Marriage of Strieby*, 45 Kan. App. 2d at 967; *In re Marriage of Ehinger*, 34 Kan. App. 2d at 590.

The other maintenance modification case where ex-spouses had a separation agreement containing a maintenance provision that is very similar to Lindsey and Matthew's maintenance provision is *In re Marriage of Santee*. There, Trena and Edward's separation agreement had a maintenance provision stating that the trial court "reserve[d] jurisdiction to reduce maintenance pursuant to K.S.A. 23-2903 downward only." 2018 WL 475477, at *1. About two years after their divorce, Edward moved for the downward modification of his maintenance obligation to Trena, citing his decreased income and Trena's increased income. Edward had lost his job and its accompanying salary. He argued that because of this, his and Trena's circumstances had materially changed to an extent that the trial court should modify his maintenance obligation to Trena downward. 2018 WL 475477, at *2-3.

Eventually, the trial court denied Edward's maintenance modification motion, finding that Edward had failed to establish "a material change in circumstances warranting a modification of maintenance." 2018 WL 475477, at *3. It explained that after taking his and Trena's "'overall financial circumstances' . . . into account," Edward had not shown that the combination of his decreased income and Trena's increased income affected his standard of living or his ability to pay maintenance. 2018 WL 475477, at *3. It highlighted that Edward had other income outside of his lost salary that

enabled him to pay maintenance as agreed in the separation agreement. It further found that "'[b]ecause fluctuation in [Edward's] income was foreseeable at the time the Agreement was signed, particularly due to [Edward's] age, his loss of employment . . . [was] not enough to rise to a material and permanent change in circumstances warranting a modification of maintenance.'" 2018 WL 475477, at *9. Also, it found that Edward's skills meant he could get a job if he wanted. 2018 WL 475477, at *9.

Edward appealed the denial of his maintenance modification motion, arguing that he had proven a material change in circumstances by losing his salary. 2018 WL 475477, at *9. In considering Edward's argument, the *In re Marriage of Santee* court pointed out that in *In re Marriage of Hedrick*, this court "recognized that no case has precisely defined 'change in circumstance' as it relates to the proposed modification of spousal maintenance." *In re Marriage of Santee*, 2018 WL 475477, at *10. Still, it pointed out that for purposes of child support modification, a material change in circumstances must be a change "'of such a substantial and continuing nature as to make the terms of the initial decree unreasonable.'" 2018 WL 475477, at *10. Then, it compared Edward's circumstances to Timothy's circumstances in *In re Marriage of Ehinger*. It explained that unlike Timothy, Edward's job loss did not deplete his income. Instead, Edward had other income sources, like an investment account, an annual trust payout, and a contract worth $56,000. 2018 WL 475477, at *11. So, the *Santee* court held that Edward's ability to pay maintenance from his other income sources prevented him from proving a material change in circumstances between him and Trena. 2018 WL 475477, at *11.

In addition to the preceding argument, Edward complained about the trial court's review of his "'overall financial circumstances." *In re Marriage of Santee*, 2018 WL 475477, at *11. He asserted that because his prenuptial agreement with Trena stated that Trena would never have any interest in certain property, the trial court abused its discretion when it considered his overall financial record to evaluate his maintenance modification motion. Yet, this court rejected this argument as well. It ruled that the trial

26

court did not abuse its discretion by considering Edward's overall financial circumstances since in denying Edward's motion, the trial court found that "the fluctuations in income from separate property 'were within the contemplation of the parties at the time of the decree when they agreed upon a maintenance amount.'" 2018 WL 475477, at *12. It indicated that it would be unfair to reverse the trial court since both Trena and Edward had made conflicting arguments about whether Edward's overall financial record should be considered. It added that Edward's argument was also unpersuasive because his and Trena's separation agreement "did not limit what the trial court could consider in determining whether maintenance should be modified." 2018 WL 475477, at *12.

Thus, as with the *In re Marriage of Ehinger* and *In re Marriage of Strieby* cases, the *In re Marriage of Santee* court's use of the material change in circumstances test supports that when an ex-spouse's ability to modify maintenance is controlled by K.S.A. 2020 Supp. 23-2903, the trial court should consider whether there has been a material change in circumstances. The *Santee* court's awareness that there is no precise definition for material change in circumstance supports that it knowingly used the material change in circumstances test even though (1) it was not listed under K.S.A. 2020 Supp. 23-2903's plain language and (2) it was not a maintenance modification condition under Trena and Edward's separation agreement or divorce decree. It supports that a material change in circumstance must be a substantial long-term change that makes an ex-spouse's maintenance obligation under K.S.A. 2020 Supp. 23-2903 unreasonable. And it supports that when the ex-spouses have entered a separation agreement with a maintenance provision, unless that provision limits what circumstances that the trial court may consider, nothing prevents the trial court from considering the ex-spouses' overall financial record when ruling whether there has been a material change in circumstances.

Since this court decided *Santee* in 2018, it seems that neither our Supreme Court nor this court have considered maintenance modification issues involving the interpretation of K.S.A. 2020 Supp. 23-2903 or the application of the material change in

27

circumstances test. It is worth noting that in *In re Marriage of Crainshaw*, No. 114,470, 2017 WL 839521, at *7 (Kan. App. 2017), a maintenance modification case that is factually and legally distinguishable from this case, this court also recognized that there is no precise definition for the term material change in circumstances before affirming the trial court's denial of an ex-husband's maintenance modification motion because he failed to prove a material change in circumstances. Of additional note, in cases like *In re Marriage of Hedrick*, this court has considered maintenance modification issues where the ex-spouses' separation agreement contained a maintenance provision explicitly stating that maintenance could be modified upon a material change in circumstances. 21 Kan. App. 2d at 967.

The *In re Marriage of Hedrick* decision is important to our review for a few other reasons as well. Again, it is the case that Matthew suggests other panels have wrongly cited in support of evaluating maintenance modification motions controlled by K.S.A. 2020 Supp. 23-2903 under the material change in circumstances test. It is the case that the *In re Marriage of Santee* court cited for the proposition that this court had previously "recognized that no case has precisely defined 'change in circumstance' as it relates to the proposed modification of spousal maintenance." 2018 WL 475477, at *10. Moreover, its underlying facts are useful in analyzing Lindsey's argument about the trial court wrongly reducing Matthew's maintenance obligation to her based on his foreseeable business losses, as it addresses whether a foreseeable event discussed but not incorporated into a separation agreement constitutes a reason for later reducing an ex-spouse's maintenance obligation.

In *In re Marriage of Hedrick*, Judith and Bruce had a separation agreement that stated the trial court retained jurisdiction "'to revise or modify the term or the amount of maintenance as a result of a material change in circumstances.'" 21 Kan. App. 2d at 965. When Judith and Bruce divorced, Judith was in law school. Several months after Judith got a job as an attorney, Bruce moved to terminate or modify his maintenance obligation

28

to Judith because she was employed. Judith countered that because her eventual employment as an attorney was "contemplated at the time the parties executed [their settlement agreement]," her employment was not a material change in circumstances entitling Bruce to the termination or modification of his maintenance obligation. 21 Kan. App. 2d at 966. The trial court disagreed, reducing Bruce's monthly maintenance obligation to Judith by about $800. 21 Kan. App. 2d at 965.

Judith appealed, repeating the argument she made before the trial court. She cited Nebraska law and treatises for the following rule: "[T]he general rule is that where the alleged change is one that the trial court expected and probably made allowances for when entering the original decree, the change is not a ground for modification of the decree.'" 21 Kan. App. 2d at 969. Bruce argued that because Judith's employment was "not contemplated by the parties when the [settlement agreement] was signed and there is nothing in the record that reveals the understanding of the parties on that issue," her recent employment was a material change in circumstances. 21 Kan. App. 2d at 969.

In rejecting Judith's argument that her employment was not a material change in circumstance, the *In re Marriage of Hedrick* court first defined the term material change in circumstances. Like the *In re Marriage of Santee* and *In re Marriage of Crainshaw* courts after it, in doing so, it explicitly noted that "[t]here is no Kansas case which interprets the phrase 'material change in circumstances' as it relates to a modification of maintenance." *In re Marriage of Hedrick*, 21 Kan. App. 2d at 968. So, the *Hedrick* court looked to a child support modification case for the definition of material change in circumstances. It then explained: "'What constitutes a material change [in circumstances] depends on the case . . . Most courts agree that [the] change should be material, involuntary, and permanent in nature.'" 21 Kan. App. 2d at 969 (quoting *In re Marriage of Case*, 19 Kan. App. 2d 883, 889, 879 P.2d 632 [1994]). Afterward, it ruled that Judith's reliance on Nebraska law and treatises was irrelevant because her settlement agreement constituted a contract that fully controlled whether the trial court properly modified

Bruce's maintenance obligation to her. 21 Kan. App. 2d at 969-70. It rejected her argument that her future employment was not a material change in circumstance based on her contention that she and Bruce had contemplated her future employment when entering the separation agreement because "[t]here [was] no evidence *or law* to support her argument on this issue." (Emphasis added.) 21 Kan. App. 2d at 970. It also determined that substantial competent evidence supported the trial court's downward modification of Bruce's maintenance obligation because Judith's transition from having no income as a student to having a stable income as an attorney constituted a material change in circumstance. 21 Kan. App. 2d 971.

Hence, the *Hedrick* case is distinguishable from this case because it involved a separation agreement that explicitly stated an ex-spouse must prove a material change in circumstances to modify maintenance. Nevertheless, the *Hedrick* court's rejection of Judith's argument about her foreseeable employment supports that a material change in circumstance may be any circumstance that is not explicitly excluded as a material change in circumstance within the ex-spouses' separation agreement or divorce decree.

So, what does the preceding review of Kansas' maintenance law establish? First, it establishes that although Lindsey and Matthew's separation agreement and divorce decree required the trial court to evaluate any maintenance modification motion under K.S.A. 2020 Supp. 23-2903, this statute contains no fact-based maintenance modification test. Second, it establishes that our Legislature has not substantively changed any of the maintenance modification rules since 1965. Third, it establishes that when reviewing maintenance modification motions where K.S.A. 2020 Supp. 23-2903 controls modification, we have used the material change in circumstances test while openly recognizing that this language is not included within K.S.A. 2020 Supp. 23-2903. Fourth, it establishes that unless language in a separation agreement or divorce decree says otherwise, any situation that substantially alters the dynamics, especially the financial dynamics, between ex-spouses may constitute a material change in circumstances.

30

*Matthew's Right for the Wrong Reason Argument is Improper and Unpersuasive.*

To review, Matthew contends that Lindsey's legal error arguments are irrelevant because the trial court could modify his monthly maintenance obligation even if his circumstances had not materially changed. He asserts that because his and Lindsey's separation agreement did not include the term material change in circumstances, he was not required to prove a material change in his circumstances to allow the trial court to partially grant his motion. He cites Kansas' maintenance caselaw as the reason why the trial court errantly applied the material change in circumstances test when evaluating his motion. And he suggests that because K.S.A. 2020 Supp. 23-2901 et seq. does not use the term material change in circumstances, the plain language of Kansas' maintenance statutes also support that he was not required to prove a material change in circumstances to permit the trial court to modify his maintenance obligation. Instead, he argues that based on a combined reading of K.S.A. 2020 Supp. 23-2902(a) and K.S.A. 2020 Supp. 23-2903, he only needed to show that the downward modification of his maintenance was fair, just, and equitable.

But Matthew's maintenance modification motion contained very little information. Outside of noting that his and Lindsey's separation agreement's maintenance provision stated that future modification of his maintenance obligation must be made in accordance with K.S.A. 2020 Supp. 23-2903, Matthew's motion cited no law. His motion had no guidance as to what conditions entitled him to the downward modification of his monthly maintenance obligation. It did not even say how much Matthew wanted his monthly maintenance obligation reduced. Instead, Matthew's motion merely noted that his "income ha[d] substantially decreased."

Although Matthew clarified that he wanted his monthly maintenance obligation reduced to $3,791,77 per month at his motion hearing, he cited no caselaw or statutes to support his argument at his hearing either. Rather, at his motion hearing, his entire

31

argument focused on his decreased income because of business losses. During the hearing, Lindsey's reference to *In re Marriage of Santee* was the only law cited. Neither party even cited K.S.A. 2020 Supp. 23-2903.

Lindsey cited *In re Marriage of Santee* for the proposition that foreseeable business losses that ex-spouses contemplated while negotiating maintenance under a separation agreement could not constitute the basis for an ex-spouse's later modification of his or her maintenance obligation. 2018 WL 475477, at *10-11. After Lindsey cited *Santee*, Matthew never challenged the *Santee* court's reliance on the material change in circumstances test. When given the chance to respond to Lindsey's argument, Matthew merely questioned the accuracy of Lindsey's evidence regarding his current financial situation. Likewise, after the trial court started its ruling by announcing that "[w]hat's at issue [was] whether . . . the Court should modify maintenance downward based on a material change of circumstances," Matthew never objected to the trial court's reliance on the material change in circumstances test.

It is a well-known rule that a party who believes that the trial court made inadequate fact-findings or conclusions of law must object to those inadequate fact-findings and conclusions of law. The objection is necessary so the trial court has the opportunity to correct those alleged errors. As a result, absent a timely objection to such inadequacies, "omissions in findings will not be considered on appeal." *Green v. Geer*, 239 Kan. 305, 311, 720 P.2d 656 (1986).

In this case, even if we were to assume for argument's sake that the trial court erred by using the material change in circumstances test, Matthew created this problem by not arguing before the trial court that there existed an alternative method for assessing his maintenance modification motion (based on the fair, just, and equitable test) *and* not objecting to Lindsey's and the trial court's reliance on the material change in circumstances test. Because Matthew was the moving party, he should have explained

what alternative law entitled him to the downward modification of his maintenance obligation. Matthew failed to do this. He also failed to argue that Lindsey's reliance on *In re Marriage of Santee* or citation of the material change in circumstances test was misplaced. Then, he stood silent when the trial court relied on the material change in circumstances test to partially grant his downward maintenance modification motion. Clearly, Matthew's silence implied that he, at least, indirectly agreed with the material change in circumstances test. His silence told the trial court that just like Lindsey, he believed that the success of his maintenance modification motion hinged on whether he had met his burden of proving a material change in his financial circumstances.

Given all of this, it is readily apparent that Matthew misled the trial court by allowing it solely to use the material change in circumstances test in evaluating and granting his maintenance modification motion. Because of his lack of candor about his alternative legal test, it would be unfair to both Lindsey and the trial court to consider Matthew's argument about affirming the trial court as right for the wrong reason. Matthew's argument is unfair to Lindsey because her appellate arguments turn on the trial court allegedly misapplying the material change in circumstances test. Also, it is apparent that Matthew has argued that the material change in circumstances test is irrelevant to avoid addressing Lindsey's entire appeal. Again, he never even directly responds to Lindsey's argument that the trial court could not modify his maintenance obligation based on his foreseeable business losses that were contemplated when entering into their separation agreement.

Moreover, his argument is unfair to the trial court because Matthew remained silent about the trial court's legal basis for partially granting his maintenance modification motion below, but now on appeal complains that the trial court's legal basis for partially granting his maintenance modification motion was wrong. By invoking this alleged legal error of the trial court, Matthew has rendered the trial court helpless to judge the legal

33

relevance of his fair, just, and equitable test under K.S.A. 2020 Supp. 23-2902(a) and K.S.A. 2020 Supp. 23-2903.

Also, by failing to raise his fair, just, and equitable test, he avoided the trial court entering an adverse ruling against him on his alternative legal theory, which would have required him to cross-appeal the trial court's rejection of his alternative legal theory under K.S.A. 2020 Supp. 23-2902(a) and K.S.A. 2020 Supp. 23-2903. See K.S.A. 2020 Supp. 60-2103(h) (stating that appellees must cross-appeal "rulings and decisions of which such appellee complains"). We decline Matthew's attempt to sandbag the trial court by attacking the court's reliance on the change of circumstance legal test that he indirectly suggested was correct by his silence. Moreover, we conclude that the change of circumstance test was supported by the only authority cited to court. See *Finnegan v. Commissioner of Internal Revenue*, 926 F.3d 1261, 1272-73 (11th Cir. 2019) (describing raising new argument on appeal as sandbagging and declining to consider argument); *Raich v. Gonzales*, 500 F.3d 850, 868 & n.18 (9th Cir. 2007).

Consequently, we decline to consider Matthew's argument about K.S.A. 2020 Supp. 23-2902(a)'s and K.S.A. 2020 Supp. 23-2903's plain language not requiring him to show a material change in circumstances to successfully move for the downward modification of his maintenance obligation.

*Matthew's Argument About Lindsey Not Designating an Adequate Record is Baseless.*

As for Matthew's apparent argument about Lindsey not designating a record on appeal supporting her claims of error because he objected to the admission of most of her exhibits *and* the trial court "resolved the arguments regarding income" in his favor, Matthew's argument is imaginative. Matthew contends that he objected when he told the trial court that Lindsey could "'put whatever [she] want[ed]'" on a spreadsheet and that her exhibits were "'manipulated and doctored,'" "'inflated,'" and "'misleading.'" A review

34

of the motion hearing transcript establishes that Matthew's then-attorney made these comments near the end of Matthew's motion hearing during her closing argument.

Nevertheless, at the start of Matthew's motion hearing, the following discussion occurred between Matthew's attorney, the trial court, and Lindsey's attorney:

"[MATTHEW'S ATTORNEY]: One other thing that I did have is I don't know how the Court wants to—I mean the Court has the exhibits. I don't know if [Lindsey's attorney] objects to any of my exhibits, or if we are going to take up exhibit by exhibit as far as objections, or if there's no objection, we might disagree with an exhibit, but if there's no objection to the admission of an exhibit if we can just admit them all at once.

"THE COURT: *And so,* [*Matthew's attorney*]*, before I inquire of* [*Lindsey's attorney,*] *do you have any objection to* [*Lindsey's*] *exhibits?*

"[MATTHEW'S ATTORNEY]: *I disagree with some of them but I don't have an objection as far as the admission of them.*

"THE COURT: Understood. [Lindsey's Attorney], what's your position on the exhibits?

"[LINDSEY'S ATTORNEY]: Same position with respect to [Matthew's] exhibit[s]. I don't have any objection. I may not agree with them. And so I agree with counsel it would certainly expedite the hearing if they were all just admitted.

"THE COURT: Okay. All right, thank you both. For purposes of the record [Lindsey's] Exhibits 1 through 27 all in consecutive order are admitted. And [Matthew's] Exhibits 100 through 118 in consecutive order are admitted." (Emphasis added.)

K.S.A. 60-404 states that this court will not set aside the judgment or decision of the trial court "by reason of the erroneous admission of evidence unless there appears of record objection to the evidence timely interposed and so stated as to make clear the specific ground of objection." As a result, a party must lodge a contemporaneous and specific objection to preserve an argument about the trial court's erroneous admission of evidence for appeal. *Estate of Mills ex rel. Mills v. Mangosing*, 44 Kan. App. 2d 399, 420, 238 P.3d 293 (2010). Also, as previously noted, a party cannot invite error and then

complain about that error on appeal. *Water District No. 1 of Johnson County v. Prairie Center Development, L.L.C.*, 304 Kan. 603, 618, 375 P.3d 304 (2016).

Here, not only did Matthew fail to object, but he actually agreed to the admission of Lindsey's Exhibits 3, 15, and 23—the specific financial exhibits he evidently complains are inaccurate based on a citation in his appellee's brief. In fact, Matthew's attorney explicitly stated that Matthew agreed to those exhibits' admission knowing that Matthew disagreed with the accuracy of some of those exhibits. Matthew's belated complaint about the accuracy of Lindsey's exhibits during closing arguments does not constitute an objection to the admission of those exhibits. But even if we assumed Matthew's belated comments constituted an objection, that objection was not contemporaneous since it occurred near the end of his hearing after the trial court had already admitted the disputed exhibits. Besides, Matthew clearly created any error resulting from the admission of the disputed exhibits by explicitly agreeing to their admission while knowing that those exhibits included information that he disagreed with.

As a result, we reject Matthew's complaint about Lindsey not designating an adequate record.

*Lindsey's Argument about Reducing Maintenance Because of a Loss of Income Alone is Contrary to Kansas Caselaw.*

Lindsey argues that generally, an ex-spouse's decreased income alone does not constitute a material change of circumstances entitling that ex-spouse to modification of his or her maintenance obligation. She contends that the *In re Marriage of Strieby* and *In re Marriage of Santee* decisions support her argument. Matthew responds that Lindsey's argument misconstrues the *Strieby* and *Santee* decisions. He also argues that the *In re Marriage of Ehinger* decision establishes that the trial court may modify an ex-spouse's maintenance obligation downward based on that ex-spouse's decreased income alone.

In *Ehinger*, Timothy's sole reason for moving for the downward modification of his maintenance obligation was his loss of income. 34 Kan. App. 2d at 584-85. In the end, the *Ehinger* court affirmed the trial court's downward modification of Timothy's maintenance obligation because he was earning $8,500 less per month than when he and Sandra entered their separation agreement. It found that this income decrease constituted a material change in circumstances. 34 Kan. App. 2d at 590. In *Strieby*, although this court considered James' argument that Linda's enforcement of their maintenance provision's escalator clause deteriorated his finances so much that a material change in circumstances had occurred, this court did not hold that a loss of income alone can never justify the downward modification of an ex-spouse's maintenance obligation. Instead, this court's rejection of James' argument emphasized that he agreed to the escalator clause under his and Linda's maintenance agreement. His agreement to the escalator clause meant that Linda's enforcement of the escalator clause was not a material change in his circumstances. 45 Kan. App. 2d at 966-67.

As to the *In re Marriage of Santee* decision, that court upheld the trial court's denial of Edward's maintenance modification motion based on Edward's failure "to show how the loss of [his] job impacted his overall financial condition." 2018 WL 475477, at *10. Nevertheless, in affirming the trial court, this court did not hold that a loss of income alone can never justify the downward modification of an ex-spouse's maintenance obligation. Rather, it did the following:  (1) It held that the trial court's consideration of Edward's overall financial circumstances was permissible since his and Sandra's separation agreement did not specifically prohibit this, and (2) it distinguished Edward's finances from Timothy's case in *In re Marriage of Ehinger* because unlike Timothy, Edward had other sources of income from which he could still pay maintenance. 2018 WL 475477, at *10.

Because the *Ehinger* court reduced Timothy's maintenance obligation solely on his decreased income, that decision strongly supports that a trial court may modify

maintenance controlled under K.S.A. 2020 Supp. 23-2903 based on an ex-spouse's decreased income alone. Again, in *Ehinger*, Sandra and Timothy had no separation agreement, meaning that the maintenance modification statute controlled the trial court's modification. So the *Ehinger* decision suggests that when reviewing maintenance modification motions controlled by K.S.A. 2020 Supp. 23-2903, the trial court may modify an ex-spouse's maintenance obligation downward based on a decreased income alone since K.S.A. 2020 Supp. 23-2903's plain language does not prohibit it. 34 Kan. App. 2d at 588-89; see also *In re Marriage of Underwood*, No. 104,315, 2011 WL 6942931, at *1 (Kan. App. 2011) (unpublished opinion) (explaining that K.S.A. 60-1610[b][2] "generally gives the district court the authority to reduce maintenance based on a material change in circumstances, like loss of employment"). In turn, in this case, Lindsey and Matthew's separation agreement's citation to K.S.A. 2020 Supp. 23-2903 supports that the trial court had jurisdiction to modify Matthew's maintenance obligation based on his decreased income alone.

Next, because neither *In re Marriage of Strieby* nor *In re Marriage of Santee* held that a loss of income alone cannot constitute a material change in circumstances, Lindsey's reliance on *Strieby* and *Santee* is misplaced. Additionally, the *Santee* decision supports that a loss of income, in and of itself, may constitute a material change in circumstances as long as the separation agreement stating that maintenance is controlled by statute does not also explicitly state that an ex-spouse's decreased income cannot constitute a material change in circumstances. 2018 WL 475477, at *10. Thus, the fact that, in this case, Lindsey and Matthew's separation agreement merely stated that future maintenance modification is controlled by K.S.A. 2020 Supp. 23-2903 without explicit language preventing the trial court from reducing Matthew's maintenance obligation based on his decreased income alone also supports that the trial court had jurisdiction to modify Matthew's maintenance obligation based on his decreased income alone.

In short, Kansas caselaw supports that in some situations, an ex-spouse's loss of income alone may constitute a material change in circumstances entitling that ex-spouse to the downward modification of his or her maintenance obligation. As a result, Lindsey's argument to the contrary is fatally flawed.

*Lindsey's Argument about Reducing Maintenance Because of Foreseeable Future Business Losses is Not Supported by Kansas Caselaw.*

Next, Lindsey's contends that the trial court erred by reducing Matthew's maintenance obligation based on his business losses that caused his decreased income. She asserts that the trial court could not consider those business losses because she and Matthew had already considered them when negotiating their separation agreement's maintenance provision. According to Lindsey, the *In re Marriage of Strieby* and *In re Marriage of Santee* decisions support the proposition that foreseeable events that were contemplated by ex-spouses when negotiating maintenance under a separation agreement cannot constitute a material change of circumstances that later entitles an ex-spouse to the downward modification of his or her maintenance obligation. She argues that this is true even when ex-spouses do not incorporate language about the foreseeable event into their separation agreements' maintenance provisions.

Again, Matthew never directly addresses this argument in his brief. While before the trial court, however, he openly admitted that he and Lindsey had a lengthy discussion about his foreseeable future business losses. So, it is undisputed that Lindsey and Matthew contemplated Matthew's future business losses when negotiating their separation agreement's maintenance provision.

Nevertheless, neither the *In re Marriage of Strieby* nor the *In re Marriage of Santee* decision support Lindsey's argument that foreseeable events that were contemplated but not incorporated into a separation agreement cannot later constitute a

material change in circumstances entitling an ex-spouse to the modification of his or her maintenance obligation. The *Strieby* decision simply does not support this conclusion at all. In *Santee*, the trial court denied Edward's motion for the downward modification of his maintenance obligation to Trena "'[b]ecause fluctuation in [Edward's] income was foreseeable'" when he and Trena entered into their separation agreement. 2018 WL 475477, at *9. In her brief, Lindsey latches on to this language as evidence that the *Santee* decision support that foreseeable events considered when negotiating maintenance in a separation agreement cannot later constitute a material change in circumstances. But she cites this language twice, attributing it once correctly to *Santee* and once wrongly to *Strieby*. It is also the only language Lindsey attributes to *Strieby* as proof that the *Strieby* decision supports her argument. The *Strieby* court, though, never held that foreseeable events contemplated during maintenance negotiations but not incorporated into the separation agreement cannot constitute a material change in circumstances entitling an ex-spouse to maintenance modification.

As for the *In re Marriage of Santee* decision, that court did not affirm the trial court's denial of Edward's maintenance modification motion based on the trial court's finding that his decreased income was foreseeable when he and Trena entered the separation agreement. Rather, after comparing Edward's financial situation to Timothy's financial situation in *In re Marriage of Ehinger*, the *Santee* court held that it "[could not] say that the trial court abused its discretion . . . in determining whether [Edward] had experienced a material change in circumstances" because Edward had the ability to pay maintenance as originally agreed to under his and Trena's separation agreement with his separate income. *In re Marriage of Santee*, 2018 WL 475477, at *12.

So, neither of the cases that Lindsey cites support her proposition that foreseeable events that were contemplated but not incorporated into a separation agreement cannot later constitute a material change in circumstances entitling an ex-spouse to the modification of his or her maintenance obligation. An appellant fails to adequately brief

all arguments that he or she fails to support with authority, resulting in abandonment of that argument. *In re Adoption of T.M.M.H.*, 307 Kan. 902, 912, 416 P.3d 999 (2018). By failing to cite any authority supporting her argument that the trial court wrongly reduced Matthew's maintenance obligation to her based on his foreseeable business losses, Lindsey has abandoned this argument for appeal.

All the same, as a final point it is worth mentioning that our holdings in *In re Marriage of Hedrick* also undermine Lindsey's argument. There, Judith raised an argument like Lindsey's. Judith argued that "her future employment was 'a circumstance that was known at the time the [separation agreement] was entered into and not specifically addressed in the [separation agreement]' and cannot now be used as the basis for a modification." 21 Kan. App. 2d at 970. The *Hedrick* court rejected Judith's argument because "[t]here [was] no evidence *or law* to support her argument on this issue." (Emphasis added.) 21 Kan. App. 2d at 970.

Here, although Lindsey has established that Matthew's future business losses were contemplated when they entered into their separation agreement's maintenance provision, she has not presented any law supporting her position. Yet, Kansas caselaw is abundantly clear: "Maintenance settled by a separation agreement that is incorporated into the divorce decree is not subject to subsequent modification by the court except as prescribed by the agreement or as subsequently consented to by the parties." *In re Marriage of Hedrick*, 21 Kan. App. 2d 964, Syl. ¶ 1; see *In re Marriage of Strieby*, 45 Kan. App. 2d at 962; *In re Marriage of Ehinger*, 34 Kan. App. 2d at 587; and *In re Marriage of Santee*, 2018 WL 475477, at *12. Nothing in Lindsey and Matthew's separation agreement's maintenance provision specifically prevented the trial court from modifying Matthew's maintenance obligation based on Matthew's future business losses. It merely directed the trial court to consider Matthew's motion in accordance with K.S.A. 2020 Supp. 23-2903, which meant the material change in circumstances test applied. The material change in circumstances test is broad enough to include future business losses. Hence,

notwithstanding Lindsey's failure to support her argument with authority, the plain language of her and Matthew's maintenance provision allowed the trial court to consider Matthew's recent business losses as a material change in his circumstances.

Finally, we note that Matthew's 2019 1040 tax form all but confirms that the trial court mistakenly averaged Matthew's 2017 total income with Matthew's 2019 total income to recalculate Matthew's maintenance obligation. For example, according to Matthew's 2019 1040 form, his total income in 2017 was $548,574 while his total income in 2018 was $695,920. Given that Matthew's 2017 total income was nearly $550,000, it follows that Lindsey and Matthew's 2018 child support worksheet relied on Matthew's 2017 total income when it listed his total income as $550,000. This makes sense why there is about a $145,000 discrepancy between Matthew's total income as listed on the August 2018 child support worksheet and Matthew's total income for tax-year 2018 as listed in Matthew's 2019 1040 form. This, then, led to the trial court's unfounded assumption that when entering into their separation agreement, Lindsey knew that Matthew's 2018 income was about $145,000 greater than the amount listed on their August 2018 child support worksheet.

But by never addressing this specific error, even in her reply brief, it follows that Lindsey has abandoned her ability on appeal to complain about the trial court's mistaken reliance on Matthew's 2017 total income rather than Matthew's 2018 total income when computing the average. See *In re Marriage of Williams*, 307 Kan. 960, 977, 417 P.3d 1033 (2018) (holding that an issue not briefed by the appellant is deemed waived and abandoned). Even so, following the guidance under *In re Marriage of Sinks*, No. 110,316, 2014 WL 4627495, at *5 (Kan. App. 2014) (unpublished opinion), we point out that Lindsey may move to correct this mistake under K.S.A. 2020 Supp. 60-260(a) after we have fully decided her appeal.

*Matthew's Request for Appellate Attorney Fees is Denied.*

For maintenance modification disputes, K.S.A. 2020 Supp. 23-2715 allows the trial court to award attorney fees "as justice and equity require." Meanwhile, our Kansas Supreme Court Rule 7.07(b)(1) (2022 Kan. S. Ct. R. at 51) allows us to award appellate attorney fees in a case where the trial court had authority to award attorney fees. Under Rule 7.07(c) (2022 Kan. S. Ct. R. at 52), we may also grant appellate attorney fees if we find that "an appeal has been taken frivolously, or only for the purpose of harassment or delay." Thus, an ex-spouse seeking attorney fees for an appeal involving a maintenance modification dispute must establish that his or her request complies with both K.S.A. 2020 Supp. 23-2715 and Rule 7.07.

Following oral arguments, Matthew moved for appellate attorney fees. In his motion, Matthew notes that several days before Lindsey filed her appellant's brief with this court, Lindsey filed an upward maintenance modification motion with the trial court. He alleges that in this motion, Lindsey never addressed the material change in circumstances test. He notes that after he moved to dismiss this motion, Lindsey replied by arguing that K.S.A. 2020 Supp. 23-2902 allowed her to move for maintenance modification "[a]t any time." According to Matthew, by so doing, Lindsey recognized the merits of his argument that K.S.A. 2020 Supp. 23-2902(a) and K.S.A. 2020 Supp. 23-2903's combined language requires an ex-spouse to only show that the modification of his or her maintenance obligation is fair, just, and equitable to obtain the downward modification of his or her maintenance obligation.

Then, Matthew relies on this assertion to further argue that justice and equity as meant under K.S.A. 2020 Supp. 23-2715 require us to grant his appellate attorney fees motion since Lindsey's appeal was frivolous as meant under Rule 7.07(c). He concludes that Lindsey's appeal had to be frivolous because she continued her appeal despite recognizing the merits of his argument about the statutory inapplicability of the material

change in circumstances test. Also, he argues that Lindsey's decision to continue her appeal supports that she appealed "for purposes of harassment or delay."

Lindsey did not timely respond to Matthew's motion for appellate attorney fees. Also, although Lindsey filed an untimely response to Matthew's motion for appellate attorney fees, her untimely response does not address Matthew's complaints about her appeal being frivolous and being taken for purposes of harassment or delay. Instead, in her untimely response, Lindsey makes irrelevant complaints about Matthew. Even so, we deny Matthew's motion for appellate attorney fees because he has not established that he is entitled to fees for several reasons.

First, Matthew's motion for appellate attorney fees suggests that Lindsey adopted his argument that courts have wrongly applied the maintenance modification test for years although K.S.A. 2020 Supp. 23-2902(a) and K.S.A. 2020 Supp. 23-2903's combined language proves that upon an ex-spouse's motion, a trial court may modify an ex-spouse's maintenance obligation whenever it is fair, just, and equitable to do so. But Lindsey never adopted Matthew's preceding argument. Instead, in her upward maintenance modification motion, Lindsey complained that Matthew's 2020 tax documents proved that Matthew's 2020 finances were comparable to his 2019 finances. She contended that because Matthew's financial circumstances remained unchanged despite having argued otherwise to obtain the downward modification of his monthly maintenance obligation from $7,725 to $5,721, the trial court should return Matthew's monthly maintenance obligation to $7,725. As for Lindsey's reliance on the K.S.A. 2020 Supp. 23-2903's language allowing an ex-spouse to move for maintenance modification at any time, we do not have Matthew's response to Lindsey's upward maintenance modification motion. But from Lindsey's reply, we know that Matthew argued that the trial court lacked jurisdiction to grant her motion. Hence, in her reply to Matthew's response, Lindsey asserted that the trial court had jurisdiction to grant her motion because it could modify maintenance at any time under K.S.A. 2020 Supp. 23-2903.

So, in her upward maintenance modification motion, Lindsey neither conceded nor suggested that Matthew's argument about the statutory inapplicability of the material change in circumstances test had merit. Indeed, Lindsey's reply to Matthew's motion to dismiss in which she cited caselaw stating that an ex-spouse must prove a change in financial circumstances to modify maintenance either upward or downward clearly proves that Lindsey never adopted Matthew's argument about the statutory inapplicability of the material change in circumstances test. Therefore, although Matthew argues that justice and equity as meant under K.S.A. 2020 Supp. 23-2715 require us to grant his appellate attorney fees motion because Lindsey's appeal is frivolous as meant under Rule 7.07(c), his argument why Lindsey's appeal is frivolous is unpersuasive. If anything, Matthew has made a frivolous argument by misrepresenting Lindsey's motion for upward maintenance modification and her reply to his motion to dismiss.

Second, notwithstanding the preceding, Matthew's motion for appellate attorney fees never addresses Lindsey's arguments on appeal. Again, on appeal, Lindsey argues that the trial court erred by reducing Matthew's monthly maintenance obligation because it did so (1) based on Matthew's loss of income alone and (2) based on foreseeable business losses that she and Matthew considered when entering into their separation agreement. Nobody contested the appropriateness of the trial court's application of the material change in circumstances test until Matthew argued that this court should affirm the trial court was right for the wrong reason in his appellee's brief. Matthew raised this new argument to provide us with another reason to affirm the trial court's downward modification of his monthly maintenance obligation to Lindsey.

Also, Matthew's decision to argue that the trial court was right for the wrong reason is questionable because he—as the appellee—has strongly advocated that the trial court erred in granting his motion for the downward modification of his monthly maintenance obligation for a reason that Lindsey never addresses in her appellant's brief. Generally, an appellee's argument about the trial court being right for the wrong reason is

45

the appellee's alternative argument—not primary argument—for affirming the trial court's decision. See e.g., *State v. Robinson*, 293 Kan. 1002, 1023, 270 P.3d 1183 (2012) (explaining that the appellee's third alternative argument was to uphold the trial court as right for the wrong reason). And even then, the appellee usually makes a limited concession that the trial court erred for the same reason the appellant argues that the trial court erred. That is to say, the appellee does not invent an entirely new reason—a reason that neither the appellee nor the appellant ever raised before—why the trial court was wrong while also arguing that we should affirm the trial court as right for the wrong reason. See e.g., *Shaw v. Southwest Kansas Groundwater Management District Three*, 42 Kan. App. 2d 994, 1000-01, 219 P.3d 857 (2009) (explaining that the appellee conceded that the trial court erred as argued by appellant but offered an alternative reason why this court should affirm the trial court as right for the wrong reason). So, if anything, Matthew's argument that the trial court was right for the wrong reason has unnecessarily complicated this appeal.

In his motion for appellate attorney fees, Matthew seems to have confused himself with his right for the wrong reason argument. Matthew's sole complaint in his motion concerns whether Lindsey's most recent filings with the trial court recognized the merits of his statutory inapplicability of the material change in circumstances test argument. *He never mentions Lindsey's arguments about the trial court wrongly modifying his monthly maintenance obligation downward based on his loss of income alone and based on foreseeable business losses considered when he and Lindsey entered their separation agreement. Therefore, in his motion, Matthew never addresses Lindsey's actual legal error arguments.*

By doing this, though, it necessarily follows that Matthew never explains why Lindsey's specific legal error arguments within her appellant's brief are frivolous. Rather, at best, he has explained why Lindsey's argument in her reply brief, contesting his appellee brief arguments about the statutory inapplicability of the material change in

46

circumstances test, is frivolous. In turn, Matthew cannot establish that justice and equity require us to grant his motion for appellate attorney fees as stated under K.S.A. 2020 Supp. 23-2715 because Lindsey's appeal is frivolous as meant under Rule 7.07(c). He has argued that Lindsey's appeal was frivolous based on arguments that Lindsey did not raise. See *In re Marriage of Williams*, 307 Kan. at 977 (holding that an issue not briefed is deemed waived or abandoned).

Third, Matthew has included just one sentence in his motion alleging that Lindsey's "continued pursuit of this appeal despite abandoning the material change in circumstances standard also indicates the appeal was taken for the purposes of harassment or delay." Even if Matthew had adequately addressed this argument, as just explained, none of Lindsey's arguments within her upward maintenance modification motion or reply to Matthew's motion to dismiss remotely support Matthew's assertion that Lindsey adopted his argument about the statutory inapplicability of the material change in circumstances test. So, Matthew's argument that Lindsey appealed to harass him and to delay the trial court's judgment is baseless.

In summary, we deny Matthew's motion for appellate attorney fees because his arguments are not supported by the record and are otherwise unpersuasive.

Affirmed.

* * *

ATCHESON, J., concurring:  I concur in the results we reach in affirming the Johnson County District Court's decision to reduce Matthew Freeman's monthly spousal maintenance payments and in denying his request for attorney fees from Lindsey Freeman for the appeal. I likewise agree that if either party believes the district court

47

made an arithmetic error in calculating the reduction, he or she may file a motion under K.S.A. 2020 Supp. 60-260(a) identifying the purported error and the relief sought.

I venture further only to say that we review district court decisions initially setting maintenance under K.S.A. 2020 Supp. 23-2902 and reducing maintenance under K.S.A. 2020 Supp. 23-2903 for abuse of judicial discretion. Maintenance is to be fixed in an amount that is "fair, just[,] and equitable" as a component of the overall division of a divorcing couple's marital property and financial obligations. K.S.A. 2020 Supp. 23-2902(a). When maintenance includes periodic payments for a defined time—here, it was for 36 months, a significant portion of which had passed—a district court may reduce the amount if it has ceased to be fair, just, and equitable. I have difficulty conjuring up a real-world example where that would be true without a material change in the parties' financial circumstances. If there hasn't been a material change, then the maintenance payments would continue to be fair.

As a practical matter, the extended debate over whether the "test" for a reduction is based on a material change in circumstances or because the maintenance is no long fair seems like an exercise in labelling without any real effect or purpose. It functionally amounts to form over substance because maintenance will almost never (if ever) cease to be fair without a material change in the parties' financial circumstances.

Here, Matthew had the burden to show the monthly maintenance payments were no longer fair, warranting a reduction to an amount that would be. There was evidence in the record supporting the district court's conclusion that his financial condition had measurably declined. But given Matthew's multifaceted business interests, some of the evidence could be construed to suggest no more than a modest decline. And Matthew certainly was not impecunious at any point. By the same token, Lindsey received substantial assets in the divorce decree apart from the spousal maintenance. Nothing in the property settlement agreement precluded the requested modification of maintenance.

While the district court might have been more expansive in explaining its decision to reduce the remainder of the maintenance payments due Lindsey, the result did not fall outside the judicial discretion conferred in such matters—an exceptionally broad authority to which we accord great deference. See *Biglow v. Eidenberg*, 308 Kan 873, 893, 424 P.3d 515 (2018) (grounds constituting abuse of judicial discretion). Given that deference, I cannot say the reduction exceeded the district court's authority. See *State v. Mulleneaux*, No. 121,503, 2021 WL 3573777, at *4 (Kan. App.) (unpublished opinion) (Atcheson, J., dissenting) (obligation of appellate judges to affirm district court decisions they may disagree with when review hinges on abuse of judicial discretion), *rev. granted* 314 Kan. 858 (2021).

* * *

HURST, J., concurring: I concur in the judgment affirming the district court's decision to decrease Matthew Freeman's maintenance payments to Lindsey Freeman and likewise agree that Lindsey has the right to pursue a mathematically accurate calculation of that decrease. I write separately only to state that the Kansas maintenance modification statute does not set forth a hurdle or condition precedent to modification like the one contained in the child support modification statute and emphasize that this court's decision is confined by the stringent parameters of the review standard.

After determining there is substantial, competent evidence to support a district court's division, distribution, adjustment, or modification of financial awards, including modification of maintenance agreements, this court reviews the district court's ultimate decision for an abuse of discretion. See *In re Marriage of Monslow*, 259 Kan. 412, 414, 912 P.2d 735 (1996); *In re Marriage of Strieby*, 45 Kan App. 2d 953, 961, 255 P.3d 34 (2011). So long as the district court's actions conform to the statutory requirements, "the district court has wide discretion in adjusting the financial obligations of the parties in a divorce action." *Monslow*, 259 Kan. at 915. After determining the district court had

49

substantial, competent evidence for its decision—which it did here—this court determines only whether the district court's decision was based on a misunderstanding or misapplication of the law, factual error, or was of such a nature that no reasonable person would come to the same conclusion. *In re Marriage of Traster*, 301 Kan. 88, 108-09, 339 P.3d 778 (2014). This court is constrained by the standard of review and does not replace the district court's judgment for its own—even where reasonable minds may differ as to the result—and affords the district court great deference in these matters.

Here, the district court correctly determined it could modify the maintenance obligations in accordance with the settlement agreement terms that provided "that [Matthew Freeman's] maintenance obligation to [Lindsey Freeman] shall be subject to future modification in accordance with K.S.A. 23-2903." This language, in conjunction with other provisions of the agreement, unambiguously permit modification of the maintenance in accordance with the cited statute. K.S.A. 2020 Supp. 23-2903 states that, "the court may modify the amounts or other conditions for the payment of any portion of the maintenance originally awarded that has not already become due. . . ." This statutory language, unlike the language governing modification of child support, does not require a showing of a "substantial change in circumstance" to support or justify the modification. "[T]he court may modify any prior child support order . . . within three years of the date of the original order or a modification order, when a material change in circumstances is shown, irrespective of the present domicile of the child or the parents." K.S.A. 2020 Supp. 23-3005(a). Child support modification requires the party seeking modification to overcome the initial hurdle of showing a material change in circumstance before the court recalculates the amount considering "all relevant factors" including those specifically listed in the statute. See K.S.A. 2020 Supp. 20-165 (listing criteria for determining child support). In child custody, the showing of a material change in circumstance is a barrier to the recalculation analysis—but that is not the case when modifying maintenance in accordance with the applicable statute—which contains no such condition precedent. This opinion does not address the parties' contractual ability to include conditions or

requirements that must be met prior to modification. But when the maintenance agreement is subject to modification pursuant to K.S.A. 2020 Supp. 23-2903, the party seeking modification is not statutorily required to overcome the hurdle of showing a material change in circumstance to permit modification.

A court may enter a maintenance order that is "fair, just and equitable under all the circumstances." See K.S.A. 2020 Supp. 23-2902(a) (setting forth the criteria for determining maintenance amounts). This court cannot say that the district court's use of a material change in circumstances analysis as a means to determine if maintenance is fair, just, and equitable—rather than an obstacle or condition precedent to modification—is an abuse of the district court's broad discretion. Moreover, given the evidence in this case as to the parties' intent, the plain language of their agreement, the statutory language, and Matthew's decrease in income, the district court did not abuse its vast discretion to determine that a material change in circumstances occurred making the original maintenance no longer fair, just, and equitable.